## WALDECK vs. BRANDE, imp.

*November 13 — November 25, 1884.*

*Partnership: Liability of one partner for acts of another after disso-*
•          *lution: Instructions to jury.*

Where a note and mortgage have been intrusted to a firm of attorneys for collection, the mere dissolution of the firm will not release one partner from responsibility to the client for money subsequently collected by the other partner to whom that business was, by the terms of the dissolution, transferred. Such release could be brought about only by the express contract of the parties or by a contract fairly implied from the circumstances and transactions after the dissolution. Instructions in such a case giving too much importance to the mere fact of dissolution are *held* to have been misleading.

APPEAL from the County Court of *Milwaukee* County.

Waldeck vs. Brande, imp.

The facts are stated in the opinion. There was a verdict in favor of the defendant *Brande*, and from the judgment entered thereon the plaintiff appealed.

For the appellant there was a brief by *Cottrill & Hanson*, and oral argument by *Winfield Smith*.

For the respondent there was a brief signed by *Finches, Lynde & Miller*, and a reply signed by *Geo. P. Miller*, of counsel, and the cause was argued orally by *Mr. Geo. P. Miller*.

TAYLOR, J. This action was brought to recover a sum of money which the plaintiff alleges the defendants collected for him upon a certain mortgage which he held against one Hawley and wife upon property situate in the county and city of Kenosha. The evidence shows that sometime in August, 1877, the plaintiff delivered the note and mortgage to the respondents for collection, and took their receipt therefor in the following form: "Received of *Jacob Waldeck*, for foreclosure, mortgage and note of Rozem R. Hawley and Edwin S. Hawley, $2,500. [Signed.] BRANDE & THIERS." At this time the respondents were copartners, doing business under the firm name of "Brande & Thiers," at Kenosha, as lawyers and real estate brokers. After the note and mortgage were received by the firm, they commenced a foreclosure action thereon. Judgment was obtained in such action. In the summer of 1879 the mortgaged premises were sold, and bid in by the plaintiff through his attorneys, "Brande & Thiers." On July 17, 1879, the firm notified *Waldeck* of the sale, and the fact that the land had been bid in and deed taken in his name, and sent to *Mr. Waldeck* their itemized bill of costs and expenses in the case. After this, and in the fall of 1879, the foreclosure judgment and the sale thereon were set aside by the court. The mortgaged premises had been, in the mean time, conveyed by the mortgagors to Mr. Quarles, and on the ——— day of October, 1880, Mr.

Quarles paid to Mr. Thiers at Kenosha the sum of $3,400, and the mortgage of *Mr. Waldeck* was released by putting on record a release executed, or purporting to be executed, by *Mr. Waldeck*. The $3,400 was apparently the whole amount of the *Waldeck* mortgage, including taxes, insurance, and the fees of his attorneys for their services in the action. Thiers sent the plaintiff $1,500 of the money collected. The balance of the money collected has never been paid by the defendants, or either of them, and it is for this balance the action is brought. The action was defended by *Brande* alone. His defense is that in July, 1879, the partnership between him and Thiers was dissolved, and that, by the terms of the dissolution, all law business then in the hands of the firm was to be thereafter transacted by Thiers on his own behalf and for his own benefit; and he also claims that *Waldeck* knew of the dissolution of the firm, and the arrangement made between the partners for the conduct of the business in the future; that, knowing of such arrangement, he accepted Thiers alone as his attorney, and permitted him to transact his business and collect the money on his mortgage; and that for the money which came into Thiers' hands by the payment of the mortgage by Quarles, he *(Brande)* was not liable to account to the plaintiff.

There is evidence in the case that *Waldeck* knew of the dissolution of the firm, but no direct evidence that he knew of the terms of the dissolution, or the arrangement as to the way the law business of the old firm should be thereafter conducted. The only evidence which in any way tends to show that after the dissolution of the firm he consented to intrust the collection of his mortgage debt to Thiers alone is (1) that the future correspondence was with Thiers, who in most of his letters used the old letter-heads of the firm, and claimed to write in behalf of the firm; (2) the testimony of one witness that after *Brande* ascertained that Thiers was not likely to pay him his money, he *( Waldeck)*

said "he dealt entirely with Thiers and had nothing to do with *Mr. Brande;*" and (3) the presumption that he delivered a release of the mortgage to Thiers to be used by him in collecting the money thereon.

We do not determine whether there was sufficient evidence to justify the jury in finding a verdict in favor of the defendant, upon a consideration of the whole case, had the same been submitted to them with proper instructions; but considering the weakness of the evidence which tends to show that the plaintiff had impliedly released the defendant *Brande* from his obligation, as a member of the firm of "Brande & Thiers," to collect and account for the money received upon such mortgage, we are inclined to hold that the learned county judge, while having a correct view of the obligations of *Brande* under his contract, submitted the case to the jury in such a way that they would be inclined to believe that if they were satisfied from the evidence that the old firm had been, in fact, dissolved, and the plaintiff had knowledge of that fact before the money was collected, and it was, in fact, collected by Thiers alone, and no part of the money came to the possession of *Brande*, they would be justified in finding a verdict in his favor.

This is clearly not the law, and it is evident that the learned county judge understood that such was not the law. The dissolution of the firm of "Brande & Thiers" could not of itself release them from their contract to collect the plaintiff's note and mortgage, either by foreclosure or otherwise; and, in order to release either of the parties from their obligation to the plaintiff, the dissolution of the firm would have no effect in itself. If the parties dissolved the firm and did not wish to close up the business on hand and for which they had obligated themselves as partners, it was their duty to make the matter known to their clients and have their obligations as a firm canceled, either by a surrender of the business back to the clients, or by getting

them to consent that thereafter the partner to whom the business was transferred by the arrangement between them should alone be held to respond to them for all acts done thereafter.

It was the express contract of the parties, or one fairly implied from the circumstances and transactions after the dissolution, which would work a release in favor of *Brande*, and not the dissolution itself. In a part of his charge to the jury the learned county judge states the law clearly enough when he says: " But I must charge you the law to be this: that if *Mr. Waldeck*, knowing the facts of the dissolution, intended to and did take from the possession and control of the firm this note and mortgage, which had been left with them for collection, and retained and employed Mr. Thiers to do those services thereafter, relieving and releasing *Mr. Brande* from any further liability, not intending to hold him, but intending to rely entirely upon Mr. Thiers for what should be done thereafter in that case, *Mr. Brande* would be released from liability and your verdict would be for the defendant." This is undoubtedly good law; but as to the evidence from which such release might be found, we think the learned judge erred in the following instruction: "If *Mr. Waldeck* was in ignorance of the fact [that the mortgage had been delivered by the firm to Thiers], the firm would be considered as his attorney for the purposes of the collection of that mortgage. But if, after he found that the partnership had been dissolved, if he found that before this transaction took place between himself and Mr. Thiers in the sale of the premises, he entered into negotiations personally for the sale of this property; if he knew that the papers were in the possession of Mr. Thiers and he had full control of these papers; if you find that by that act he intended, knowing all the facts, to relieve *Mr. Brande* from any liability upon that transaction in the sale of the property; if you find that from the testimony or.

from the acts of the parties with reference to it, *Mr. Brande* would not be liable."

We think this instruction objectionable because it makes the mere possession of the note and mortgage by Thiers, after plaintiff had knowledge of the dissolution, sufficient evidence from which the jury might find that the plaintiff released *Brande*. It is, perhaps, objectionable also for the reason that it assumes there was evidence in the case from which the jury might find that Thiers had the possession and absolute control of the papers after the dissolution, and that the plaintiff knew that fact. From an examination of the evidence in the record it is very doubtful whether there is any evidence which would justify the jury in finding these facts.

At the close of the judge's instructions one of the jurors asked the following question: "I would like to ask the court one question as regards notice of dissolution of a partnership: What is necessary to be made in order to make it legally binding?" The court answered: "When you intrust business to a firm of lawyers, and the copartnership is dissolved and the notice of dissolution is given, the simple fact of giving notice is not sufficient to bind you, having had business transactions with the firm, unless it is shown that you received a copy of the paper in which the notice was, or had evidence from the firm in some way notifying you of the fact that there would be a dissolution." And in reply to this question from the defendant's counsel, "If one of the members of the firm stated to the party that the firm was dissolved, would that be sufficient notice?" the judge answered: "Yes. Notice in the newspaper would not be sufficient unless it was brought home to the knowledge of the plaintiff."

We think in the whole charge too much importance was given to the fact that the firm had been dissolved before the money was collected, and the court should have corrected

that impression, which was clearly manifested by the question of the juror, in his reply thereto, instead of simply stating what would be sufficient notice of a dissolution. The dissolution of the firm, as said above, was, in itself, no release of *Mr. Brande*, and the fact that there was a dissolution was only important as showing a reason why there would be a probability that some new arrangement was made for the collection of plaintiff's mortgage. Because we think the jury were misled by the instructions of the court the judgment must be reversed.

*By the Court.*— The judgment of the county court is reversed, and the cause remanded for a new trial.